UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>NORTH AMERICAN TITLE INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:19-cv-00424-JAD-EJY<br><br>**ORDER RE ECF NOS. 46, 58 AND RECONSIDERATION OF ECF NO. 77** |

This case is part of the large second wave of cases pending in the U.S. District Court for the District of Nevada in which coverage issues relating to Nevada HOA liens securing post-policy delinquent assessments are being litigated. Motions to seal have crisscrossed this matter and a similar matter titled *Bayview Loan Servicing, LLC v. North American Title Insurance Company*, 2:19-cv-01151-JAD-EJY ("*Bayview*"), which is cited by the parties to this action. *See*, *e.g.*, ECF Nos. 63, 70.

Currently before the Court are two Motions to Seal—one filed by North American Title Insurance Company ("North American") and a second filed by U.S. Bank (sometimes the "Bank"). ECF Nos. 46, 58.[1] No response to ECF No. 58 was filed, but this is of no moment as the issues presented in the instant Motions to Seal (and several prior motions to seal) are being and have been

---

[1] In ECF No. 46, North American incorporates its arguments from a prior motion to seal at ECF No. 43, which states, in pertinent part: "Every title insurer assesses risks differently, and the quality of each title insurer's risk assessment can place them at a competitive advantage or disadvantage vis-à-vis other title insurers." ECF No. 43 at 3. North America further contends it "would lose any competitive advantage that it could otherwise reap from its own ingenuity" if competitors "could access the underwriting bulletin setting forth" North American's "analysis of that particular risk." *Id*. North American focuses on the proffered confidentiality and trade secret nature of the information in its Bulletins stating it "takes every reasonable precaution to prevent the dissemination of these underwriting bulletins beyond the circle of people who need to know their contents." *Id*. ECF No. 58 is filed by U.S. Bank and asks the Court to seal the same Bulletins based on the confidentiality agreement it entered with North American and the Protective Order entered by the Court. *Id*. at 1-2. U.S. Bank states it "does not believe the Bulletins are confidential" but submits them under seal to comply with the Protective Order. *Id*. at 2. U.S. Bank refers the Court to ECF No. 38 for its substantive argument regarding the content of the Bulletins. *Id*. ECF No. 38 is a redacted copy of the Bank's 21 page Motion for Partial Summary Judgment. Despite having no obligation to do so, the Court reviewed ECF No. 39 (an unredacted version) and located only the following statement regarding the confidentiality of the North American Bulletins: "U.S. Bank does not believe these documents are confidential, but is nonetheless filing its Motion under seal to comply with this Court's protective order." *Id*. at 6.

litigated numerous times before. ECF Nos. 37, 43, 50, 68, 71, 74, 81. The instant case has also produced two objections. ECF Nos. 52, 83.[2]

Because all of the motions, oppositions, replies, and objections address the same two insurance Bulletins (Nevada Title Bulletin 2015-01 and National Title Bulletin 2018-04), the Court reviewed them all in preparation for this Order. The Court *sua sponte* reconsiders its Order at ECF No. 77 and issues the following on regarding ECF Nos. 46, 58.[3] The Court looks to Rule 1 of the Federal Rules of Civil Procedure in an effort to fully and, hopefully, finally address whether the Bulletins are properly sealed in their entirety, should be unsealed, or should be redacted and filed in that form on the public docket.

Without doubt the parties vehemently dispute whether the Bulletins are properly sealed. U.S. Bank consistently argues the Bulletins are not confidential because they are publicly disseminated, do not contain confidential information, and the public interest outweighs any harm North American might suffer if the Bulletins are unsealed. U.S. Bank says the language in North American's Bulletins regurgitates trade usage that is readily available from the public dissemination by other insurers of the same substantive materials. North American argues the Bulletins are confidential and contain "trade secrets," a proposition on which the Court did not opine when previously exercising its discretion concluding there were compelling reasons to seal the Bulletins. *See* ECF No. 77 at 5-6.

**I.     Discussion**

    A.     <u>Overview of Applicable Law</u>.

Courts recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Accordingly, when a court considers a sealing request, it starts with "a strong presumption in favor

---

[2] The Court notes that also pending is North American's Motion to Seal its Response to Plaintiff's Objection (ECF No. 88) addressing the same issues as all other motions to seal filed in this case. However, the due date for U.S. Bank's response to this Motion is July 14.

[3] The Court has discretion to *sua sponte* reconsider one of its prior rulings so long as the Court has jurisdiction over the subject matter of that ruling. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, CIVIL NO. 12-00064 LEK-KSC, 2016 WL 6996982, at *6 (D. Haw. Nov. 23, 2016) (citing *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004)).

of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (2003). This presumption, however, "is not absolute and can be overridden given sufficiently compelling reasons for doing so." *Id.*

"[P]ublic access to filed motions and their attachments" depends on whether the motion to which the sealed documents are appended is "more than tangentially related to the merits of a case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). If the motion or exhibits appended to a motion are more than tangentially related to the merits of the case, the moving party must demonstrate "compelling reasons[,] supported by specific factual findings[,]" showing sealing the records outweighs public access and the "policies favoring disclosure." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (citing *Kamakana*, 447 F.3d at 1178-79) (internal quote marks from original omitted). If the documents are only tangentially related to the merits of the case, the moving party need only show "good cause" to seal. *Id.* at 678.

Well regarded case law hold that "confidential business information" including "license agreements, financial terms, details of confidential licensing negotiations, and business strategies" satisfies the "compelling reasons" to seal. *See In re Qualcomm Litig.*, Case No. 3:17-cv-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (observing that sealing such information "prevent[ed] competitors from gaining insight into the parties' business model and strategy"). In *McMorrow v. Mondelez*, Case No. 17-cv-2327-BAS-JLB, 2021 WL 488337, at **2-3 (S.D. Cal. Feb. 10, 2021) the court found various documents concerning consumer research and information, generally providing a competitive advantage, demonstrated compelling reasons to seal. In *Synchronoss Technologies, Inc. v. Dropbox Inc.*, Case No. 16-cv-00119-HSG, 2017 WL 11527607, at *2 (N.D. Cal. Dec. 27, 2017), a patent infringement case, the court applied the local rule and Ninth Circuit standard when granting a request to seal based solely on the plaintiff's declaration, which stated the documents were "highly confidential and proprietary information belonging to Synchronoss constituting sensitive proprietary business information about the architecture of Synchronoss's technology that is not publicly available or publicly disclosed and has been maintained … in a confidential manner." In *Finisar Corp. v. Nistica, Inc.*, Case No. 13-cv-03345-BLF (JSC), 2015 WL 3988132, at *5 (N.D. Cal. June 30, 2015), another patent infringement case,

3

the court held, without conducting substantial analysis, that "Finisar's confidential product and business information which is not intended for public disclosure, … are properly sealed in their entirety."  In sum, these cases and numerous others not cited, but easily located, demonstrate the decision to seal documents is "one best left to the sound discretion of the trial court" upon consideration of "the relevant facts and circumstances of the particular case."  *Nixon*, 435 U.S. at 599.

As stated by the Court in its Order at ECF No. 77, the Court applies the "compelling reasons" standard to the Bulletins at issue here because these documents bear more than a tangential relation to the merits of the case.  *Ctr. for Auto Safety*, 809 F.3d at 1101; *Miotox LLC v. Allergan, Inc.*, Case No. 2:14-cv-08723-ODW(PJWx), 2016 WL 3176557, at *1 (C.D. Cal. June 2, 2016).

      B.      <u>Protection of Trade Secrets, Personal Identifying Information, or Financial Data is Not Required to Seal Documents</u>.

U.S. Bank tells the Court that if the Bulletins are not trade secrets or "do not disclose any personal identifying information, like loan numbers, or contain internal financial data, … they are not confidential."  ECF No. 83 at 3.  This proposition was offered by U.S. Bank in the Objection to the Court's Order on the identical subject (ECF No. 77) in which the Court granted North American's motion to seal.  The Court addresses this contention in an effort to put this argument to rest.

It is true that protecting trade secrets is one basis upon which compelling reasons to seal documents may rest, but protecting trade secrets is not the only reason court seals documents.  Fed. R. Civ. P. 26(c)(1)(G) ("requiring trade secret *or* other confidential research, development, *or* commercial information" to be protected from being improperly revealed) (emphasis added).  Further, protecting personal identifying information ("PII") and financial data may satisfy compelling reasons to seal but, again, this type of information, in addition to trade secrets, does not comprise the finite bases to seal.  *In re Qualcomm Litig.*, 2019 WL 1557656, at *3 (granting motions to seal "confidential business information of the parties, including trade secrets, proprietary business records, *discussions of internal strategy, company dealings*, and related materials designated as Highly Confidential") (emphasis added).  By way of further example only, in *J.M. Woodworth Risk Retention Group, Inc. v. Uni-Ter Underwriting Management Corp.*, Case No. 2:13-cv-00911-JAD-

4

PAL, 2014 WL 12769806, at *1 (D. Nev. May 20, 2014), the court considered "discussion between [p]laintiff and a potential business partner … that include[d] information about [p]laintiff's proprietary business practices, the structure of its business, and specific information about its finances and relationships with its insureds and service providers," appropriately sealed. The court stated if the information was publicly disclosed it "would … interfere with Plaintiff's ability to negotiate future deals with its service providers." *Id*. The court further noted that "proprietary and confidential information about the corporate structure and internal governance" was properly sealed. *Id*. No finding or discussion of trade secrets, PII or financial data was discussed in this case. *Id*. In *American General Life Insurance Company v. Nelson*, Case No. C19-5095RBL, 2020 WL 3488152, at *2 (W.D. Wash. June 26, 2020), the court found the insurer's internal underwriting guidelines, internal underwriting table ratings, and a declaration discussing the insurer's "competitively-sensitive proprietary underwriting information and materials" each properly sealed. No discussion of trade secrets and no additional analysis was provided by the court. *Id*. These cases, as well as Fed. R. Civ. P. 26, demonstrate that the Bank's proposition that sealing of the Bulletins "in this setting" is only proper if the Bulletins qualify as trade secrets or disclose PII or financial data does not accurately reflect the only bases upon which North American's sealing request may be granted.

C. The 2015-01 and 2018-04 Bulletins.

The "Nevada Title Bulletin 2015-01" is a one and one-half page document that starts by discussing the Nevada Supreme Court September 2014 decision in *SFR Investments Pool 1, LLC vs. U.S. Bank, N.A.* (the "2014 *SFR* Decision"). ECF No. 39-15. The Bulletin summarizes the holding of the decision and then discusses North American's underwriting practices impacted by this decision. *Id*. The Bulletins refers to specific schedules and language in those schedules, specific endorsements that are not to be used, other endorsements that may be used, and then returns to the 2014 *SFR* Decision explaining North American's overall policy and practices with respect to issuing title insurance. *Id*. The Bulletin closes by stating "This Bulletin is intended for use by title insurance agents of … [North American] and any reliance by any other person or entity is not authorized." *Id*. at 3.

The "National Title Bulletin 2018-04" is a five page document. This Bulletin starts with a discussion of the American Land Title Association's ("ALTA") adoption of expanded coverages related to residential mortgage transaction. ECF No. 39-16 at 1. After discussing this history, the Bulletin provides underwriting guidelines for agents, a summary of endorsement coverages, and state/HOA declaration or covenant specific restrictions. *Id*. at 4-5. The Bulletin concludes with the same language as the 2015 Bulletin regarding use and reliance. *Id*. at 6.

        D.        <u>North American's Testimony and the Bank's Response</u>.

The Declaration of David Schreiber, Senior Claims Counsel for North American, states a proposition that does not seem to be refuted. That is, "[e]very title insurer assesses risks differently, and the strengths of a title insurer's risk assessment can place it at a competitive advantage or disadvantage with its peers." ECF No. 43-1 ¶ 5. Mr. Schreiber further states the Bulletins address North American's underwriting standards—the risks North American is and is not willing to take. *Id*. ¶ 7. Mr. Schreiber explains North American limits the dissemination of the Bulletins to its title agents and instructs those agents not to provide these Bulletins to anyone else.[4] *Id*.

North American's Regional Underwriting Counsel, Kent Pelt, submitted a declaration in the *Bayview* matter that is cited in North American's Reply in support of its Motion to Seal. ECF No. 86 at 5 *citing* ECF No. 63-6. In his Declaration, Mr. Pelt (with whom the Bank has not taken issue) states he has been employed by North American since 2012, and one of his primary job responsibilities "involves developing guidelines that are used by North American's independent and affiliated policy issuing agents." ECF No. 63-6 ¶¶ 1, 3. Mr. Pelt explains that while "form policies of title insurance and form title insurance endorsements developed by national and state industry organizations" may be used by multiple insurers, "each title insurer establishes its own underwriting standards for when the various policies and endorsements can be used." *Id*. ¶ 3. This statement is

---

[4] U.S. Bank takes issue with Mr. Schreiber's declaration stating he is "claims" not "underwriting" counsel and fails to demonstrate the basis for his personal knowledge. ECF No. 70 at 6. The Court notes Mr. Schreiber, an attorney, declares to the Court, under penalty of perjury, that he has personal knowledge of the facts to which he attests. Mr. Schreiber has a duty of candor to the court. *Serio v. Pregame*, Case No. 2:21-cv-01940-JAD-NJK, 2023 WL 3223796, *3 (D. Nev. May 3, 2023) *citing* Nev. R. Prof. Cond. 3.3(a)(1). Starting with the premise that an attorney submitting a declaration would not intentionally misrepresent the scope of his knowledge, there is also nothing before this Court demonstrating a senior claims counsel would not have sufficient knowledge to attest to the subject matters to which Mr. Schreiber attests.

6

1  not refuted. Mr. Pelt explains North American underwriting counsel "authored" the Bulletins at
2  issue here, and these counsel consider the Bulletins "confidential and trade secrets." *Id*. ¶ 4. Mr.
3  Pelt confirms "North American only disseminates these underwriting bulletins to its independent
4  and affiliated policy issuing agents. Otherwise, these bulletins are only accessible from a password-
5  protected website." *Id*. According to Mr. Pelt, one of the reasons for "secrecy is that the title
6  insurance marketplace is competitive, every title insurer has its own underwriting standards, and
7  less-conservative or riskier underwriting standards could potentially place one title insurer at a
8  competitive advantage over others." *Id*. Mr. Pelt also states the information in the 2018 Bulletin at
9  issue in this case would not have been available at the time the insurance policy being litigated was
10 issued in 2006. *Id*. ¶ 6.

At his deposition (ECF No. 63-7) Mr. Pelt testified as follows:

Q:  So what, if anything does … [Defendant] do to require its agents to maintain the confidentiality of these two bulletins?

A:  We really haven't had to give express instructions. Again, custom and practice in the industry, it's just understood that this information is to be kept to various underwriters.

***

Q;  Are all bulletins prepared by North American -- all bulletins that go to agents, are they all confidential?

A:  They're intended to be.

Q:  And it's your understanding that the -- we've talked about the dissemination part. After they're disseminated, separate and aside from that, confidentiality is maintained by the password-protected website?

A:  Yes

ECF No. 63-7 at 3-4.

U.S. Bank also refers the Court to Mr. Pelt's testimony filed in *Bayview*. ECF No. 70 at 6 *citing Bayview,* ECF No. 137 at 5:15-6:10. Much of the discussion in ECF No. 137 is redacted. However, the unredacted version of this brief refers the Court to yet another *Bayview* document (ECF No. 109-A at 23:16-25). ECF No. 109-A contains additional pages from Mr. Pelt's deposition in which the following exchange took place:

Q:  … Now, earlier you had mentioned -- earlier, beginning of the deposition, we talked about confidentiality of this document, and I think you had said

7

|   |   |
|---|---|
|   | there was a portion of this document that you thought contained some language regarding confidentiality.  Is that accurate? |
| A: | Yes. |
| Q: | Okay.  Can you point me to where that is? |
| A: | The very last page, in blue, the second 15 note, it reads: "This bulletin is intended for use by title insurance agents of NATIC and any reliance by any other person or entity is not authorized."  And then based on custom and practice in the industry for all the decades I've worked, close to 40 years, that's the expectation and that's the industry standard, people keep these bulletins confidential and only use it for -- distribute them with permission from the underwriters. |

***

| Q; | … [H]ow, if at all, is it communicated to agents that they're not supposed to disclose the title bulletins? |
|---|---|
| A: | For me, personally, it's a case-by-case inquiry from the agent, and the reputable, experienced agents that I've worked with all ask the question whether they can share these bulletins.  And in most cases, we'll decline to do so, but I will have a discussion with the party asking for the information.  On rare authorizations, I'll authorize release of the bulletin. |

*Id*. at 7, 12-13.

U.S. Bank argues Mr. Pelt's case-by-case analysis of whether he discloses the Bulletins to outside agents based on his 40 years of experience, something he rarely does, demonstrates the Bulletins are not confidential and cannot be sealed.  U.S. Bank apparently did not ask Mr. Pelt how many times the rare disclosure of either Bulletin has been disclosed to a non-affiliated agent, whether Mr. Pelt knows, based on his 40 years of experience, how the Bulletins are used, or whether confidentiality is requested of such non-affiliated agents.  *Id*. at 13.

The Court finds U.S. Bank seeks to rely on industry custom to prove the Bulletins are not confidential (ECF Nos. 70 at 6, 8 13; 83 at 4), but rejects Mr. Pelt's testimony regarding industry custom requiring confidentiality despite the uncontested fact that he is at least a 40 year veteran of the insurance industry.  ECF No. 63-6 ¶ 1; *Bayview*, ECF No. 109-A at 7.  U.S. Bank provides no testimony from an expert, whether retained or non-retained, stating Mr. Pelt's knowledge of the industry custom is incorrect.[5]

---

[5]      U.S. Bank also refers to the agreements between North American and their agents arguing the lack of a confidentiality provision in those agreements defeats confidentiality.  ECF No. 70 at 6.  However, as stated and supported in *Nelson Brothers Professional Real Estate LLC v. Jaussi*, Case No. SA CV 17-0158-DOC (JCGx), 2017 WL 8220703,

8

1    Mr. Pelt, like Mr. Schreiber, is an attorney with a duty of candor to the Court independent of
2    his role as counsel for North American. NEV. R. PROF. COND. 3.3. The Court finds no reason to
3    believe that Mr. Pelt knowingly testified other than candidly.

   E.  <u>Comparison of Bulletins to Publicly Available Information</u>.

In the Objection filed (ECF No. 83) to the Court's Order in this case (ECF No. 77), U.S. Bank does a side-by-side comparison of the Bulletins to various publicly available insurance documents the Bank says demonstrates the contents of North American's Bulletins are not confidential. First, U.S. Bank compares Bulletin 2018-4 to the North American's website. ECF No. 83 at 7, 8 *citing* ECF No. 60-B and ECF No. 38-P. The comparison quotes the last paragraph on page 1 of this Bulletin (ECF No. 39-16)[6] and three sentences from some portion of North American's webpage. ECF No. 60-B. The language is not identical. U.S. Bank argues the primary difference between 2018-04 Bulletin and North American's website "is the Bulletin's specific reference to Nevada" and "the message is the same—[North American's] … agents are not allowed to sell" certain coverage involving certain liens in some states one of which is Nevada. ECF Nos. 83 at 8; *see also* ECF No. 70 at 9.[7]

The Court's review finds the 2018 Bulletin discusses differences between two versions of the ALTA's expanded residential loan policy one of which is available "in certain permitted states" and the other of which insures only "where the violations exists[] at Date of Policy." ECF No. 39-16 at 2-3. The Bulletin goes on to discuss a summary of enhanced coverages provided to assist agents with their understanding of North American's general underwriting guidelines, those underwriting guidelines, and state/HOA specific restrictions. *Id*. at 2-5. In contrast, the content of

---

at \*5 (C.D. Cal. Mar. 23, 2017), "courts in the Ninth Circuit have found reasonable effort even in the absence of a nondisclosure agreement. *See, e.g.*, *Extreme Reach, Inc. v. Spotgenie Partners, LLC*, No. CV 13–07563–DMG (JCGx), 2013 WL 12081182, at \*4 (C.D. Cal. Nov. 22, 2013) (finding plaintiff 'established that it took reasonable steps to maintain the secrecy of its Customer list by password protecting it, making it available to only certain employees, and protecting it with a firewall'); *Bartech Sys. International, Inc. v. Mobile Simple Solutions, Inc.*, No. 2:15-cv-02422-MMD-NJK, 2016 WL 3002371, at \*6 (D. Nev. May 24, 2016) (deciding an alleged trade secret was confidential because it was 'kept within a password-protected, internal server, and only [plaintiff's] own developers had access to it')." (Internal quote marks altered.).

[6] ECF No. 38-P (aka 38-16) is entirely redacted. Hence, the Court reviewed ECF No. 39-16.
[7] The same section of U.S. Bank's Opposition to the Motion to Seal (ECF No. 70 at 8-9) adds a single sentence regarding the 2015-01 Bulletin. The Bank states: "The content within Bulletin 2015-01 is essentially the same analysis publicly provided on North American's website." ECF No. 70 at 9.

North American's website speaks to state statutes creating a lien priority over mortgages or deeds of trust and advises agents to "take care" when issuing endorsements "that insure mortgage priority over HOA or condominium assessments." ECF No. 83 at 7.

Even assuming some overlap regarding ALTA endorsement (as U.S. Bank contends), the five page 2018-04 Bulletin is broader than the contents of the North American website on which the Bank relies. U.S. Bank does not mention or discuss "general underwriting guidelines," a summary of its endorsement restriction, or the "specific state restrictions" in the 2018 Bulletin and does not provide evidence that the underwriting guidelines, discussion of endorsements, or state specific restrictions are on North American's website. North American's counsel testified these instructions are provided to its agents, rarely to non-affiliated agents, and are on a password protected website that is not available to the public. There is no evidence that the entirety of the contents of the 2018-04 Bulletin is publicly available.

U.S. Bank next argues that the Bulletins are "materially identical to widely publicized and publicly available trade usage materials …." ECF No. 70 at 9-10. *See also* ECF No. 83 at 8-9. Without citation, U.S. Bank states, four times, that the Bulletins contain basic trade usage, sometimes also stating the Bulletins are a "mere regurgitation" of this trade usage known for "decades."[8] ECF No. 70 at 3, 6, 8, 11. *See also* ECF No. 83 at 3, 4. The Court's analysis of this contention does not support the conclusion that even if some of the information in North American's Bulletins is trade usage this means the Bulletins are entirely non-confidential and must be unsealed.

Cases cited by U.S. Bank regarding trade usage do not discuss the phrase "trade usage"; nor do the cases conduct an analysis that might be applicable to the confidentiality issues in the case at bar. *See Kamakana*, 447 F.3d at 1178 (in which the Ninth Circuit considered whether a magistrate judge abused her discretion when deciding not to continue the secrecy of city documents finding there was no longer a basis for maintaining them under seal); *Times Mirror v. U.S.*, 873 F.2d 1210, 1219 (9th Cir. 1989) (in which the Ninth Circuit rejected the public's right to access search warrants

---

[8]   Under UCC § 1-303(c), "trade usage" is defined as "any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage must be proved as facts. If it is established that such a usage is embodied in a trade code or similar record, the interpretation of the record is a question of law."

and supporting affidavits relating to an ongoing investigation and before indictments were returned).[9]  In sum, U.S. Bank's cited cases do not demonstrate the entirety of the information in North American's Bulletins is trade usage or that the Bulletins cannot be sealed in whole or in part.

The only decision issued in the Ninth Circuit the Court found discussing trade usage in the insurance industry was an Eastern District of California case considering beehive pollination agreements and the use of the word "rent" in such agreements.  In *Nationwide Agribusiness Insurance v. George Perty & Sons, Inc.*, 338 F.Supp.3d 1063, (E.D. Cal. 2018), the Court stated: "This [trade usage] evidence is relevant to contract interpretation under California law.  *See Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1357, 8 Cal.Rptr.3d 649 (2004) ('evidence of industry custom and [trade] usage' 'relevant and admissible to expose the latent ambiguity in the contract language regarding the industry's customary usage of the term'); *Heggblade-Marguleas-Tenneco, Inc. v. Sunshine Biscuit, Inc.*, 59 Cal. App. 3d 948, 956, 131 Cal.Rptr. 183 (1976) ('[P]ersons carrying on a particular trade are deemed to be aware of prominent trade customs applicable to their industry.')."  (Internal quote marks altered.)  The court in *Nationwide Agribusiness* did not address, discuss, or hold that because a business document contains "trade usage" it is not confidential.

In the Bank's Opposition to the Motion to Seal it also references Stewart Title stating that company's underwriting guidelines are all on line at its "virtual underwriter" website, thereafter citing to three Stewart Title publications.  ECF No. 70 at 10-12.  Two of the documents to which the Bank cites are 1991 and 1993 Bulletins.  *Id*. at 11.  The third is a portion of Stewart Title's "Guideline" from 2016.  *Id. citing* ECF No. 60-6.  These publicly available documents cover various ALTA endorsements.  Relying on these documents, the Bank concludes the information in North American's Bulletins have been known for decades.  *Id*. at 11.  However, the Court is unclear how publications in 1991 and 1993 could consider the 2014 *SFR* Decision or the revisions to ALTA's original Expanded Loan Policy that occurred in 2015, which are discussed in North American's 2018 Bulletin.  The third document, the Stewart Title Guideline from 2016 addresses ALTA endorsements 5-06 and 5.1-06 and the impact of these endorsements when issued with a loan policy.  ECF No. 60-

---

[9] U.S. Bank also cites *Lado v. Wolf*, No. 19-56417, 2020 U.S. App. LEXIS 5580 (9th Cir. Feb. 24, 2020), which the Court could not locate on Westlaw.

6. The 2015-04 North American Bulletin addresses Nevada specifically and is far broader with respect to ALTA endorsements that should and should not be issued as part of a loan policy, and reminds agents of the company's overall policy stance on insuring a foreclosure of an HOA lien. The 2018-04 Bulletin, after discussing changes to ALTA's "Expanded Coverage Residential Loan Policy," addresses far more than endorsements 5-06 and 5.1-06. *Compare* ECF No. 39-16 *to* ECF No. 60-6. The Court does not disagree that the subject matters overlap. However, the totality of what is discussed in the Bulletins includes information specific to North American's Nevada practices as well as its underwriting guidelines that have not been shown to be public in anything on which U.S. Bank relies from Steward Title.

In its Objection, U.S. Bank also refers to a 2014 Stewart Title Bulletin comparing it to North American's 2015 Bulletin. ECF No. 83 at 9. The Stewart Title Bulletin, like the North American 2015 Bulletin, discusses the 2014 *SFR* Decision in its first paragraph. ECF No. 39-15. The Court agrees this discussion is not confidential. However, the instructions to the insurers' agents are not identical. The endorsements to which Stewart Title refers are a subset of the endorsements to which North American refers. *Compare* ECF Nos. 83 at 9 (column titled Stewart Title's Bulletin NV2014002) *citing* 59-13 *and* ECF No. 39-15. The discussion in the second paragraph on page 1 and the entirety of the discussion on page 2 of the North American 2015 Bulletin are not quoted or mentioned at all in the summary of the Stewart Title Bulletin provided. *Id*. For reasons more fully discussed below, the Court finds the 2015 Bulletin, without redaction, is properly sealed. However, the Court finds the second paragraph through the end of the Bulletin is properly redacted, with the remainder of the Bulletin filed on the public record.[10]

---

[10] A comparison of the WFG, Westcor, and Fidelity Bulletins (ECF Nos. 70 at 10, 12, 14; 83 at 9) to the North American 2015 Bulletin yield the same result. While there is discussion of the 2014 *SFR* Decision, the discussion of endorsements is not identical.

Moreover, as discussed in its Order at ECF No. 77, the Court rejects U.S. Bank's reliance on the decision issued in *Deutsche Bank National Trust Company v. Westcor Land Title*, Case No. 2:20-cv-01706-APG-VCF. In *Deutsche Bank*, the plaintiff moved to seal a bulletin the defendant title company marked as confidential. The court entered a minute order stating its intent to deny the motion because there was no need to seal the exhibit at issue. *See id*. at ECF No. 69. The court provided the defendant (Westcor) an opportunity to respond to the minute order, explaining if defendant failed to respond the court would deny the motion to seal. *Id*. The defendant did not respond and the document at issue was unsealed. *Id*. The order did not discuss the content of the bulletin, whether the bulletin contained trade secrets or why the court found no basis to seal the document. *Id*.

12

The Bank refers to James Gosdin, a past chair of the ALTA forms committee, who is said to have drafted the forms the Bank calls "trade usage materials." ECF No. 70 at 9. After quoting Mr. Gosdin, U.S. Bank says Mr. Gosdin's "sentiments" are "echoed" in North American's 2015 Bulletin. *Id*. at 10. Again, while Mr. Gosdin discusses some ALTA endorsements, he does not discuss all instructions to North American title agents given in its 2015 Bulletin.

F. <u>Public Interest Warrants Redacting Rather than Sealing the Bulletins in their Entirety</u>.

U.S. Bank contends the public's interest in understanding the judicial process warrants denial of North American's Motion to Seal. ECF No. 70 at 3. The Banks goes so far as to say it is "***necessary***" (emphasis in original) that the public know what is in the Bulletins "so that it—and the courts—can understand the persuasiveness of the trade usage contained in the Bulletins" and therefore how "unreasonable" it was for North American to deny coverage. *Id*. at 13. North American argues the Bulletins are not trade usage and are barely referenced by U.S. Bank in its Motion for Partial Summary Judgment rendering the Bank's arguments meritless. ECF No. 86 at 7-8.

The Court considers that what has never been shown throughout this litigation, or the *Bayview* litigation, is that North American's Bulletins are publicly available—something the Court is certain would have been demonstrated had there been evidence to support this fact. Presuming that North American, like all insurers, looks to the ALTA and its forms, which North American does not dispute, this cannot mean that every insurer does everything exactly the same. If this were true there would never be a reason for an insurer to maintain confidentiality of anything it did and no insurer would have a competitive edge over another. This is a conclusion and proposition with which the Court cannot agree.

Of course, the Court recognizes that all insurers would react to the 2014 *SFR* Decision by the Nevada Supreme Court regarding priority and extinguishing of property liens in light of homeowner association actions arising from the failure to pay dues. But, despite the numerous company public documents to which U.S. Bank points, it does not show that the underwriting guidelines, discussion of endorsements, state specific information, or the company's policy regarding insuring an HOA foreclosure is the same as that of all its competitors to which the Bank

cites. Importantly, North American has demonstrated it takes reasonable steps to assure the confidentiality of the Bulletins. The Bulletins are disseminated to affiliated agents who are told, in writing, the Bulletins are for their use only and no other person or entity is authorized to rely on the documents. The industry custom is to maintain confidentiality of the Bulletins. And, the Bulletins are password protected after dissemination. The only exception to these practices is approval by Regional Underwriting Counsel on the rare, case-by-case basis, disclosures to experienced agents with whom that 40 year practitioner has worked. There is nothing presented to the Court that supports the conclusion this rare exception practice has resulted in disclosure outside of those to whom permitted use is granted.

The Court finds compelling reasons to seal unredacted portions of the Bulletins, as well as portions of the motion practice discussing the sealed portions described.[11] While the totality of the Bulletins are not properly sealed, North American demonstrates that portions of the Bulletins are maintained in a confidential manner for purposes of protecting internal business practices from disclosure "that might harm … [North American's] standing." *Nixon*, 435 U.S. at 598.[12] The Court finds given "the relevant facts and circumstances of … [this] particular case" (*id*., 435 U.S. at 599), North American meets its burden to demonstrate the confidential business portions of its Bulletins are properly kept sealed. Indeed, prevention of such harm is sufficient to support a sealing request. *Qualcomm*, 2017 WL 5176922, at *2.

---

[11] The Court recognizes that North American has only sought to seal the entirety of the documents relying on confidentiality and trade secrets. ECF No. 46 at 4-5, 86 at 5-6, 89 at 6-10. As previously stated, the Court's decision is not confirming the information contained in the Bulletins is trade secrets. However, the Court sees no reason to disregard the confidential information North American repeatedly addresses. *Foltz*, 331 F.3d at 1137 (to the extent any confidential information can be easily redacted while leaving meaningful information available to the public, the Court must order that redacted versions be filed rather than sealing entire documents; *see also In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 425 (9th Cir. 2011) (the district court must "keep in mind the possibility of redacting the sensitive material"). The Court exercises its discretion upon consideration of "the relevant facts and circumstances of the particular case" (*Nixon*, 435 U.S. at 599), to find the confidential business information is properly redacted from North American's Bulletins.

[12] Mr. Schreiber states the Bulletins address North American's underwriting standards—the risks North American is and is not willing to take. ECF No. 43-1 ¶ 7. Mr. Pelt states that while "form policies of title insurance and form title insurance endorsements developed by national and state industry organizations" may be used by multiple insurers, "each title insurer establishes its own underwriting standards for when the various policies and endorsements can be used." ECF No. 63-6 ¶ 3. North American's "underwriting bulletins reflect the mental thoughts and impressions of underwriting counsel and constitute … [North American's] guidance to its title agents regarding the risks that … [North American] is (and is not) willing to undertake." ECF No. 46 at 4-5. *See also* ECF no. 43 at 3.

The public interest in this information does not outweigh North American's interest in confidentiality. With respect to the Bank's argument that it is important for the public and the courts to know what is in the Bulletins, this concern does not outweigh North American's interest. First, of course, the Court is fully aware of what the Bulletins say. Whether filed on the public docket or sealed, the Court has access to the Bulletins in their entirety.

With respect to the general public, it is questionable, at best, that the public would "understand the persuasiveness of the trade usage contained in the Bulletins." ECF No. 70 at 13. When the case concludes the public will know whether and why North American properly or improperly (or as U.S. Banks says "unreasonably") denied coverage to the Bank as the Court will have to explain its reasoning in whatever decision is reached. The technical language in the Bulletins that the Court deems properly redacted will not assist the public in that process sufficiently to warrant disclosure of confidential business information.

G.  Instructions for Redacting North American's Bulletins.

A review of the 2015 North American Bulletin demonstrates the contents beginning with the second paragraph on page 1 through the end of the Bulletin is properly redacted. The first paragraph contains a recitation of general information that does not reflect any business related assessments or decisions regarding practices going forward. The remainder of the 2015 Bulletin states it is based on the decisions of the company's underwriters and is properly sealed.

A review of the 2018 North American Bulletin demonstrates the entirety of page 1 through the end of the paragraph above Section B (Summary of Enhanced Coverages) on page 2 is not properly sealed. This information discusses ALTA policy, changes to that policy, and difference between the current and former policies adopted. "Summary of Enhanced Coverages," "General Underwriting Guidelines," and "State by State Restrictions" reflect North American's confidential business practices and direction to its agents that are properly sealed. With respect to the testimony in Exhibit Q and the filings on record to which the Motions to Seal apply, redactions should be made only to the extent they address the portions of the Bulletins the Court ordered sealed.

## II.     Order

IT IS HEREBY ORDERED that North American Title Insurance Company's Motion for Leave to File Opposition for Partial Summary Judgment and Countermotion Under Seal (ECF No. 46) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that U.S. Bank's Motion for Leave to File its Response to North American Title Insurance Company's Renewed Motion to Seal (ECF No. 58) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the 2015 and 2018 Bulletins are to be redacted as described above and filed by North American on the public docket in their redacted form no later than **July 21, 2023**.

IT IS FURTHER ORDERED that to the extent Exhibit Q is to be refiled redacting only those portions of the testimony discussing the redacted portions of the Bulletins, North American is required to file the redacted Exhibit Q on the public docket no later than **July 21, 2023**.

IT IS FURTHER ODERED that the Court's June 2, 2023 Order (ECF No. 77) granting in part North American's Renewed Motion to Seal (ECF No. 43) is reconsidered.  The discussion and holdings in this Order supersedes ECF No. 77.

IT IS FURTHER ORDERED that any pending motion, opposition or reply that is filed on the public docket redacting, discussing or referencing Exhibits O, P, or Q are to be reviewed and refiled on the public docket removing any redactions other than those that comply with the terms of this Order.  These refiled motions, oppositions, and replies, if any, are to be refiled no later than **July 21, 2023**.

IT IS FURTHER ORDERED that before further motion practice is filed regarding (1) the sealing and/or redacting of Exhibits O, P, and Q or (2) any motions, opposition or reply referring to Exhibits O, P, and Q, the parties **must** meet and confer in person or by videoconference (telephone

and email are insufficient) to discuss their differences of opinions about what should be redacted and what may be filed on the public record in accordance with the direction provided by this Order.

Dated this 10th day of July, 2023.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

17